UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES FIRE INSURANCE
COMPANY, a Delaware corporation,

   Plaintiff/Counter-Defendant,

 v.

THE CITY OF WARREN, a Michigan municipal
corporation,

   Defendant/Counter-Plaintiff.
_____

CASE NO. 2:10-CV-13128
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

THE CITY OF WARREN, a Michigan municipal
corporation,

   Third-Party Plaintiff,

 v.

ROYAL INDEMNITY COMPANY, n/k/a Arrowood
Indemnity Company, a Delaware corporation,
ARROWOOD INDEMNITY COMPANY, f/k/a Royal
Indemnity Company, a Delaware corporation,
HARTFORD ACCIDENT AND INDEMNITY
COMPANY, a Connecticut corporation, GLEN FALLS
INSURANCE COMPANY, a Delaware corporation, and
CONTINENTAL INSURANCE COMPANY, as
successor to Glen Falls Insurance Company, a Delaware
corporation,

   Third-Party Defendants.

_____/

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CITY OF
WARREN'S MOTIONS TO COMPEL (docket #56-59)

I. OPINION

A. *Background*

  This is an insurance coverage dispute between the City of Warren ("the City") and several

insurance companies regarding the insurance companies' duties to defend and indemnify with respect to a state court class action suit against the City currently pending in the Macomb County Circuit Court. In the underlying state court action, *Hill v. City of Warren*, the plaintiff class alleges that their property was damaged by the growth of roots from trees planted by, or at the insistence of, the City, in the City owned right-of-way between the street and sidewalk in front of plaintiffs' homes. The *Hill* action was filed on May 2, 2000. Plaintiff/Counter-Defendant United States Fire Insurance Company ("U.S. Fire") alleges that it provided general liability coverage to the City through a series of annual insurance polices beginning in the mid-1970s through June 30, 1998. U.S. Fire alleges that it first received notice of the *Hill* litigation on October 9, 2003. After further proceedings in the state court action, including an appeal of the trial court's class-certification decision and attempts to mediate the state court action, U.S. Fire filed this action on August 6, 2010, seeking a declaratory judgment that it is not liable to defend or indemnify the City with respect to the *Hill* litigation. Specifically, U.S. Fire claims that it has no duty to defend or indemnify the City because: (1) the City knew of the ongoing losses and failed to disclose its knowledge at the time of each annual policy renewal; (2) the City breached the notice provisions of the policies; (3) the property damage alleged in the *Hill* litigation is not the result of an "occurrence" covered by the policies; (4) any "occurrence" which did occur did so outside of the period the City was covered by the U.S. Fire policies; (5) all or some of the damages are within the intended acts exclusion of the policies; (6) damages in the *Hill* litigation arising from the release of sewage into the homeowner's property is excluded by the pollution exclusion of the policies; (7) to the extent damage occurred to city owned property, the damages sought in the *Hill* litigation are excluded by the owned property exclusion of the policies; (8) the damages sought are excluded by the policies because the City's actions constituted a willful violation of a penal statute; and (9) the first $250,000.00 in damages with respect to each individual plaintiff

in the underlying class action are subject to the City's self-insured retention in the policies. The City counter-claimed, asserting claims of breach of contract, breach of the implied duty of good faith and fair dealing, and reformation. The City also filed third-party complaints against third-party defendants Royal Indemnity Company ("Royal"), Arrowood Indemnity Company ("Arrowood"), Hartford Accident and Indemnity Company ("Hartford"), Glens Falls Insurance Company ("Glens Falls"), and Continental Insurance Company ("Continental"). The third-party complaint alleges that these companies provided insurance coverage to the City at various points from the 1960s through 2001, and seeks a declaratory judgment that these companies have a duty to defend and indemnify with respect to the *Hill* litigation. The third-party complaint also alleges a breach of contract claim against Royal.

The matter is currently before the Court on the City's four motions to compel discovery from, respectively, U.S. Fire, Arrowood, Hartford, and Continental (docket #56-59), all filed on November 28, 2010. With respect to each company, the City seeks the party's underwriting manuals, documents reflecting the company's interpretation of key policy terms, and documents reflecting discussions with reinsurers and the setting of reserves. With respect to U.S. Fire and Arrowood, the City also seeks the claims file and claims manuals. Each company has filed a response to the motion directed to it, and the City has filed replies. A hearing was held on January 24, 2012, at which time the motions were taken under advisement.

B.      *General Discovery Standards*

Rule 26 sets forth the scope of discovery in federal courts. Pursuant to the rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and the court may also "order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). The rule further explains that "[r]elevant information need not be

admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 26(b)(1) "encourage[s] the exchange of information through broad discovery." *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004); *see also*, *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 627-28 (N.D. Okla. 2009) ("Rule 26(b)(1) defines a broad scope of discovery."); *Seales v. Macomb County*, 226 F.R.D. 572, 575 (E.D. Mich. 2005) (Whalen, M.J). The relevancy standard set forth in Rule 26(b)(1) "is commonly recognized as one that is necessarily broad in its scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Security Plans, Inc. v. CUNA Mutual Ins. Society*, 261 F.R.D. 4, 8 (W.D.N.Y. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also*, *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 648-49 (S.D. Fla. 2009).

Claims of privilege in federal court are governed by Federal Rule of Evidence 501, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501. Because only state law claims are asserted by the parties, only Michigan privilege law is implicated. Under Michigan law, "[t]he scope of the [attorney-client] privilege is narrow: it attaches only to confidential communications by the client to its adviser that are made for the purpose of obtaining legal advice." *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 450, 528 N.W.2d 778, 780 (1995). However, "[t]he privilege does not . . . automatically shield documents

given by a client to his counsel." *McCartney v. Attorney General*, 231 Mich. App. 722, 731, 587 N.W.2d 824, 828 (1998). Further, while communications are privileged, the underlying facts are not privileged. *See Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514, 517 (W.D. Mich. 2002) (citing *Fruehauf Trailer*, 208 Mich. App. at 451-52, 528 N.W.2d at 781).

Attorney work product not subject to the attorney client privilege is also protected from disclosure by Rule 26, which in relevant part provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

FED. R. CIV. P. 26(b)(3)(A). The rule further provides that "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). This provision establishes two categories of work product: fact work product, which is discoverable upon a showing of substantial need and undue hardship, and opinion work product, which is virtually undiscoverable. *See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206 F.R.D. 474, 478 (N.D. Ill. 2002).

With respect to both the attorney-client privilege and the work product doctrine, the party resisting discovery bears the burden of demonstrating the applicability of the privilege. *See Auto Owners Ins. Co. v. Total Tape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990); *In re Shopping Cart Antitrust Litig.*, 95 F.R.D. 299, 305-06 (S.D.N.Y. 1982). "A party asserting the attorney-client

privilege has the burden of showing with competent evidence of record that it clearly applies. . . . Where a party fails to substantiate a claim of attorney-client privilege, the claim will be denied." *Meridian Mortgage Corp. v. Spivak*, No. 91-3932, 1992 WL 205640, at *3 (E.D. Pa. Aug. 14, 1992) (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 687-88 (E.D. Pa. 1986)).

C. *Analysis*

1. *Claims File*

The City seeks from both U.S. Fire and Arrowood the claims file related to the City's claim for coverage under the applicable policies. Although overlapping somewhat, the issues with respect to U.S. Fire and Arrowood differ, and thus will be analyzed separately.

*a. U.S. Fire*

From U.S. Fire the City sought "[a]ll Documents obtained in the investigation of the Claim," "[a]ll documents reflecting U.S. Fire's analysis or findings relating to the Claim," and "U.S. Fire's complete claim file relating to the Claim, including any claims diary, Electronic notes, e-mails, or other electronic documents relating to the Claim." Document Request Nos. 20-22. Although U.S. Fire produced numerous documents, it did not produce a claims file. Rather, U.S. Fire asserts that there is no claims file as generally understood, because U.S. Fire does not regard the City as ever having made a formal claim with respect to the *Hill* action. U.S. Fire further notes that, at the time it first received notice of the *Hill* action, it had already been embroiled in litigation with the City regarding numerous coverage issues and fully expected this litigation to encompass the *Hill* action. U.S. Fire contends that neither it nor its outside counsel "conducted an independent factual investigation of the underlying claims in the [*Hill*] Class Action." U.S. Fire's Resp. Br., at 7. Rather, its only activity with respect to the *Hill* litigation was "coverage counsel's review and analysis of

court filings by the parties. That analysis," U.S. Fire argues, "is reflected in the privileged communications and memoranda that Warren currently seeks to compel." *Id.* U.S. Fire contends that these documents, therefore, are privileged.

In response, the City argues that routine claims processing activity, even when conducted by attorneys, is not shielded by the attorney-client privilege. Further, the City argues that U.S. Fire has waived the privilege by sharing with the City, prior to the filing of this declaratory judgment action, various notes "To File" by its outside counsel, Michael Whitting, which contain "his legal analysis and mental impressions of the various policies and underwriting files implicated by the Hill case, as well as discussion of his investigation of the claim on behalf of US Fire." City of Warren's Br., at 6. The City notes that in the instant action, these notes were neither produced nor included on U.S. Fire's privilege log. Finally, the City argues that U.S. Fire's position that it has no claims documents is inconsistent with its interrogatory response identifying Tom Trezise, Chris Decker, Angela Duguay, Kevin McNamara, and Paul Schmidt as claims representatives who were involved in the handling, investigation, and evaluation of Warren's claim for coverage. Despite this interrogatory answer, the City argues, U.S. Fire has failed to produce these individuals' notes, correspondence, and e-mails related to the *Hill* litigation.[1]

With respect to the Whitting documents, the Court concludes that the information sought by the City is protected from disclosure by the attorney-client privilege and work product doctrines. As the City correctly notes, a claims file is generally not protected from disclosure by the work product doctrine, because investigation of a claim is generally done in the normal course of business, and not in anticipation of litigation. *See Flagstar Bank v. Federal Ins. Co.*, No. 05-CV-70950-DT, 2006 WL

---

[1]For simplicity, I will refer to documents reflecting communications by or to outside counsel as the "Whitting documents," and documents reflecting notes or communications by or to the U.S. Fire employees identified by U.S. Fire as the "internal documents."

6651780, at *4 (E.D. Mich. Aug. 21, 2006) (Majzoub, M.J.) (citing *Harper v. Auto-Owners Ins. Co.*, 138 F.R.D. 655, 663 (S.D. Ind. 1991); *Mission Nat'l Ins. Co. v. Lilly*, 112 F.R.D. 160, 164 (D. Minn. 1986)). Notwithstanding this general rule, documents created in anticipation or for the purpose of litigation with the insured remain subject to the work product privilege. *See Compton v. Allstate Property & Cas. Ins. Co.*, 278 F.R.D. 193, 196 (S.D. Ind. 2011). Thus, internal documents remain subject to the work product privilege where the "primary motivating purpose behind the creation of a document or investigative report [is] to aid in possible litigation." *Id*. (internal quotations omitted); *see also*, *Henderlong v. Allstate Ins. Co.*, No. 08-cv-01377, 2009 WL 82493, at *2 (D. Colo. Jan. 13, 2009) (work product rule applicable where "the probability of litigating the claim is substantial and perhaps imminent."); *Flagstar*, 2006 WL 6651780, at *5 (work product rule applicable where "litigation is a real and substantial possibility and . . . the particular document was generated because of the threat of litigation, and not for ordinary business purposes."). Similarly, although there is not Michigan law directly on point, the courts uniformly hold that communications between an insurance company and outside counsel retained to provide legal advice regarding coverage, rather than to perform routine claims adjustment, remain protected by the attorney-client privilege. *See Cummins, Inc. v. Ace America Ins. Co.*, No. 1:09-cv-00738, 2011 WL 1832813, at *2 & n.2 (S.D. Ind. May 2, 2011) (discussing cases applying Indiana, Illinois, and New York law); *Umpqua Bank v. First American Title Ins. Co.*, No. CIV S-09-3208, 2011 WL 997212, at *3 (E.D. Cal. Mar. 17, 2011) (California law); *Lexington Ins. Co. v. Swanson*, 240 F.R.D. 662, 668-69 (W.D. Wash. 2007) (Washington law); *Tudor Ins. Co. v. McKenna Assocs.*, No. 01 Civ. 0015, 2003 WL 21488058, at *3 (S.D.N.Y. June 25, 2003) (New York law).

With these principles in mind, the Court concludes that U.S. Fire's work product and attorney-client privilege objections are well taken. This is not a typical insurance action, in which an insured

makes a claim, the company investigates the claim and then denies coverage, and the insured files suit. Rather, at the time the City informed U.S. Fire of its potential claim, (a) the *Hill* litigation had already been pending for over three years, and (b) the City and U.S. Fire were engaged in a wide ranging coverage litigation in which the City alleged that U.S. Fire had wrongfully denied coverage in over 100 suits filed against the City over a 13 year period. In light of the pendency of these actions, it was reasonable for U.S. Fire to anticipate litigation immediately upon receiving notice of the *Hill* litigation, and to seek the legal advice of outside counsel regarding its coverage obligations. Nothing in the record contradicts U.S. Fire's assertion that it did not conduct an ordinary claims analysis, and that it immediately considered the issue a legal one rather than an ordinary claims decision. Accordingly, the Court concludes that the documents sought by the City are shielded by the attorney-client privilege and work product doctrines.

      The City argues that U.S. Fire has waived the attorney-client privilege by the inadvertent disclosure of Whitting's "To File" documents. With respect to this issue, the parties debate the proper application of FED. R. EVID. 502, which governs whether a disclosure of a matter subject to the attorney-client privilege operates as a waiver as to undisclosed matters concerning the same subject matter and provides specific rules for dealing with inadvertent disclosures. *See* FED. R. EVID. 502(b). The inadvertent disclosure provisions of Rule 502(b), however, are inapplicable here. By its terms, Rule 502(a) and (b) apply only to disclosures "made in a federal proceeding or to a federal office or agency[.]" FED. R. EVID. 502(a), (b). With respect to disclosures made in a state proceeding, the disclosure is protected by the more protective of Rule 502 or state law. *See id*., 2011 advisory committee note. Specifically, the rule provides that

> [w]hen the disclosure is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure:

9

>> (1) would not be a waiver under this rule if it had been made in a federal proceeding; or
>> (2) is not a waiver under the law of the state where the disclosure occurred.

FED. R. EVID. 502(c). Under Michigan law, the attorney-client privilege is personal to the client and protects against both disclosure of protected information and its evidentiary use. For this reason, a waiver of the privilege must be intentional, knowing, and voluntary, and "cannot be predicated upon an inadvertent disclosure." *46th Circuit Trial Ct. v. Crawford County*, 266 Mich. App. 150, 176, 702 N.W.2d 588, 606 (2005), *rev'd on other grounds*, 476 Mich. 131, 719 N.W.2d 553 (2006); *see also*, *Leibel v. General Motors Corp.*, 250 Mich. App. 229, 240, 646 N.W.2d 178, 185 (2002). Thus, the inadvertent disclosure of these "To File" documents does not operate as a waiver of the privilege.

The City also suggests that U.S. Fire waived the attorney-client privilege by failing to either disclose or list on its privilege log the "To File" documents that had previously been disclosed. Contrary to the City's argument, the failure to file a proper privilege log does not automatically result in a waiver of the privilege; rather, the Court may fashion an appropriate remedy which may, but need not, include a finding of waiver. *See Cashman Equip. Corp. v. Rozel Operating Co.*, No. 08-363-C-M2, 2009 WL 2487984, at *2 n.4 (M.D. La. Aug. 11, 2009) (discussing cases); *Trudeau v. New York State Consumer Protection Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006). In any event, even if U.S. Fire's failure to list these documents on its privilege log resulted in a waiver of the privilege, it would do so only with respect to these specific documents; it would not effect a general subject-matter waiver of the attorney-client privilege. *See Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, No. 08cv1559, 2010 WL 2404664, at *3 (S.D. Cal. June 11, 2010) (finding waiver of privilege with respect to document disclosed in untimely privilege log, but noting that "[t]he purported privilege would be waived only as to this specific document. No subject matter waiver is

10

herein implicated."); *In re Honeywell Intern., Inc., Sec. Litig.*, 230 F.R.D. 293, 300 & n.3 (S.D.N.Y. 2003) (granting motion to compel with respect to specific documents for which privilege log was inadequate but noting that nothing in the court's order "should be read as inviting a broader subject-matter waiver.").[2]

Finally, the City suggests that U.S. Fire has waived the privilege by placing its attorney-client communications at issue. Specifically, the City argues that "by denying almost every allegation made in Warren's counterclaim for bad faith, US Fire has implicitly placed at issue the good faith or bad faith nature of its claims handling activities and coverage determinations." City of Warren's Br., at 12. This argument is without merit. Although it is true that a party may impliedly waive the privilege by placing the subject matter of a privileged communication at issue in the litigation, this waiver is construed narrowly. *See In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). An implied waiver occurs only where the party's "pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail." *Id*. As explained by Judge Murphy, the cases in this area

> stand for the principle that when a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice "at issue" and thereby waives the attorney client privilege on the narrow subject matter of those communications.

*Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 469 (E.D. Mich. 2008) (Murphy, J.).

Here, it is doubtful that U.S. Fire's good or bad faith is relevant at all in this action. As

---

[2]It is not clear whether U.S. Fire asserts that the disclosed documents, which were not included on the privilege log, remain privileged, and the Court therefore offers no opinion on the issue here. It is sufficient here to note that even if the privilege has been waived as to these documents by U.S. Fire's failure to include them on its privilege log, this fact does not waive the privilege with respect to other documents which are included on the log.

11

explained more fully below in the discussion of the City's request for interpretive documents, there is no cause of action for bad faith breach of an insurance contract, and the contract construction issues before the Court are legal matters as to which the good or bad faith of the parties is irrelevant. Even assuming, however, that bad faith is relevant, U.S. Fire has not injected any privileged communication into the case. U.S. Fire's complaint does not mention good faith; the issue was first injected by the City in its affirmative defenses and counterclaims. U.S. Fire's answer to the counterclaims did not assert advice of counsel, or any other privileged communication, as a defense to the City's bad faith claim. Rather, U.S. Fire simply denied that it had acted in bad faith. Such a simple denial, without more, is insufficient to waive the privilege. "To waive the attorney client privilege by voluntarily injecting an issue in the case, a defendant must do more than merely deny a plaintiff's allegations. The holder must inject a new factual or legal issue into the case." *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1098 (7th Cir. 1987). Here, U.S. Fire has not injected any new issue into the case, and nothing in their prosecution of the complaint or defense of the City's counterclaims relies upon the advice of counsel or any privileged communication. If this changes, of course, U.S. Fire may be held to have waived the privilege. On the record as it now stands, however, U.S. fire has not placed at issue any privileged communication, and thus it cannot be said to have waived the privilege.

Because the claims material sought by the City is privileged or protected by the work-product doctrine, and because U.S. Fire has not waived the attorney-client privilege, the City's motion will be denied with respect to these materials.

### b. Arrowood

With respect to Arrowood, the waiver issues discussed above with respect to U.S. Fire are not implicated. The City, however, makes the same arguments that the materials which Arrowood redacted from its production of the claim file are not privileged. For the same reasons discussed

12

above with respect to the U.S. Fire documents, the Court disagrees. As explained above, legal advice concerning the scope of coverage does not constitute non-legal claims work, but legal work subject to the attorney-client privilege. Accordingly, the City's motion will be denied with respect to the Arrowood documents.

    2.    *Interpretation of Policy Terms*

With respect to each company, the City seeks documents reflecting the company's interpretation of policy terms. Illustrative is Document Request No. 3 propounded to U.S. Fire, which seeks:

> All documents related to US Fire's interpretation, discussion, analysis, or consideration or any policy provision at issue in the Action, including 'Known Risk/Loss in Progress,' 'Notice,' 'Voluntary Payments,' 'Occurrence,' 'Intended Acts,' 'Absolute Pollution' exclusion, 'Owned Property' exclusion, and 'Willful Violation of Penal Statute' exclusion.

The companies objected on various bases, including irrelevancy, overbreadth, and attorney-client privilege.

Documents relating to an insurance company's interpretation of the policy terms are irrelevant to a coverage action. Under Michigan law, an insurance contract is given its plain and ordinary meaning. *See Henderson v. State Farm Fire & Casualty Co.*, 460 Mich. 348, 354, 596 N.W.2d 190, 193-94 (1999). More importantly, "the construction and interpretation of an insurance contract is a question of law for a court to determine." *Id*. at 353, 596 N.W.2d at 193. Thus, the parties' interpretations of various contractual language are legal arguments made to the Court; they are not discoverable facts bearing on any issue involved in the litigation. The City argues that such documents may be relevant to demonstrating that the companies have denied coverage in bad faith. Bad faith, however, is irrelevant. "[T]he tort of bad faith breach of an insurance contract does not exist in Michigan." *Burnside v. State Farm Fire & Casualty Co.*, 208 Mich. App. 422, 425 n.1, 528

13

N.W.2d 749, 751 n.1 (1995); *see also*, *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 401, 729 N.W.2d 277, 286 (2006); *cf. Kewin v. Massachusetts Mut. Life Ins. Co.*, 409 Mich. 401, 420, 295 N.W.2d 50, 55 (1980) ("In the commercial contract situation . . . the injury which arises upon a breach is a financial one, susceptible of accurate pecuniary estimation.  The wrong suffered by the plaintiff is the same, whether the breaching party acts with a completely innocent motive or in bad faith.").  Further, "[t]he duty to defend . . . arises solely from the language of the insurance contract.  A breach of that duty can be determined objectively, without reference to the good or bad faith of the insurer." *Stockdale v. Jamison*, 416 Mich. 217, 224, 330 N.W.2d 389, 392 (1982).  An insurer who fails to timely pay a claim may be subjected to penalty interest under the Uniform Trade Practices Act, *see Burnside*, 208 Mich. App. at 431, 528 N.W.2d at 753; MICH. COMP. LAWS § 500.2006, but the penalty is available for any failure to timely pay, regardless of good or bad faith and regardless of whether the claim is reasonably in dispute.  *See Cromer v. Safeco Ins. Co. of Am.*, No. 2:09-cv-13716, 2010 WL 1494469, at *4 (E.D. Mich. Apr. 14, 2010) (Rosen, J.); *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 276 Mich. App. 551, 566, 741 N.W.2d 549, 557 (2007).

Because the interpretative materials sought by the City are not relevant to any party's claim or defense and the discovery requests are not reasonably calculated to lead to the discovery of admissible evidence, the interpretative materials are not discoverable, and the City's motion will be denied with respect to these materials.[3]

---

[3] In related discovery requests, the City also sought documents containing factual support for the companies various assertions that a particular policy term or exclusion is applicable.  Such factual information showing, for example, that the occurrence happened on City owned property thus rendering the owned property exclusion applicable, as opposed to information relating to how the companies interpret the exclusion as a legal matter, is discoverable.  The parties' briefs focus on the interpretive material issue, however, and it is therefore not clear the extent to which the companies have objected to producing this information or may have already produced this information.  Nothing in the above discussion prejudices the City's ability to seek this type of factual information to the extent it has not already been provided.

3.  *Claims Manual/Guidelines*

The City also seeks claims manuals and guidelines from both U.S. Fire and Arrowood. The companies argue that this information is irrelevant. The Court disagrees.

While an insurance contract is interpreted according to its terms, extrinsic evidence may become relevant if those terms are determined to be ambiguous. And an insurance company's internal claims manual or claims processing guidelines may contain information relevant to resolving any ambiguities in the contract, such as the company's course of dealing or insurance industry practice. For this reason, even in coverage disputes discovery requests seeking claims manuals and similar documents are reasonably calculated to lead to the discovery of admissible evidence, and thus proper. *See Cummins, Inc. v. Ace American Ins. Co.*, No. 1:09-cv-00738, 2011 WL 130158, at *5 (S.D. Ind. Jan. 14, 2011); *Silgan Container v. National Union Fire Ins.*, No. C 09-05971, 2010 WL 5387748, at *8 (N.D. Cal. Dec. 21, 2010); *Taco, Inc. v. Federal Ins. Co.*, No. 07-27S, 2007 WL 4269810, at *3 (D.R.I. Nov. 30, 2007); *Champion Inter. Corp. v. Liberty Mut. Ins. Co.*, 129 F.R.D. 63, 67-68 (S.D.N.Y. 1989).[4] Accordingly, the City's motions will be granted with respect to the claims manuals and claims processing information sought by the City from U.S. Fire and Arrowood. The documents produced by U.S. Fire and Arrowood may be produced subject to the stipulated confidentiality order

---

[4] *Rooney v. Chicago Ins. Co.*, No. 00 Civ. 2335, 2000 WL 1093051 (S.D.N.Y. Aug. 4, 2000) and *Kennedy v. Provident Life & Accident Ins. Co.*, No. 07-81218, 2009 WL 3048683 (S.D. Fla. Sept. 18, 2009), upon which U.S. Fire relies, are inapposite. In *Rooney*, the court explicitly noted that the plaintiff had made no allegation of an ambiguity, and thus there was no possibility that extrinsic evidence could become relevant. *See Rooney*, 2000 WL 1093051, at *1. In *Kennedy*, the court considered not the discoverability of claims manuals under Rule 26, but the admissibility of such manuals at trial under Rules 401-402 of the Federal Rules of Evidence, which establish a more stringent relevancy standard than Rule 26. *See Kennedy*, 2009 WL 3048683, at *2. To the extent that *Garvey v. National Grange Mut. Ins. Co.*, 167 F.R.D. 391 (E.D. Pa. 1996) and *Oklahoma Publ'g Co. v. Continental Ins. Co.*, No. CIV-90-1251-A, 1991 WL 323804 (W.D. Okla. Nov. 5, 1991) support U.S. Fire's position, the Court concludes that those decisions fail to accord the relevance standard of Rule 26 the full sweep it has been accorded in the caselaw.

entered into by the parties.

4. *Underwriting Manual/Guidelines*

The City next seeks, from each company, its underwriting manuals and related information. This information is discoverable for the same reason that the claims manuals are discoverable. If the City is able to show that the policy terms at issue are ambiguous, information in the underwriting manuals and guidelines may lead to the discovery of admissible extrinsic evidence relating to the proper construction of the policy terms, including the companies' course of dealing and industry usage. The information sought is thus discoverable. *See Silgan Containers v. National Union Fire Ins.*, No. C 09-05971, 2010 WL 5387748, at *4 (N.D. Cal. Dec. 21, 2010); *GBTI, Inc. v. Insurance co. of State of Pa.*, No. 1:09cv01173, 2010 WL 2942631, at *3-*4 (E.D. Cal. July 23, 2010); *Pentair Water Treatment (OH) Co. v. Continental Ins. Co.*, No. 08 Civ. 3604, 2009 WL 3817600, at *4 (S.D.N.Y. Nov. 16, 2009); *Machinery Movers, Riggers & Machinery Erectors, Local 136 Defined Contribution Pension Plan v. Fidelity & Deposit Co. of Md.*, No. 06 C 2539, 2007 WL 3120029, at *3 (N.D. Ill. Oct. 19, 2007). Accordingly, the City's motions will be granted with respect to this information.

5. *Discussions with Reinsurers/Setting of Reserves*

With respect to each company, the City seeks information relating to discussions between the companies and reinsurers, and information regarding the setting of reserves. With respect to the reserve issue, the companies argue both that such information is irrelevant, and that it may be protected by the attorney-client privilege or work product doctrine. The Court agrees that the reserve information sought by the City is irrelevant under Rule 26.

A reserve is merely "a fund of money set aside by a[n] . . . insurance company to cover future liability." BLACK'S LAW DICTIONARY 1309 (7th ed. 1999). It is, therefore, merely a business

16

judgment made by an insurance company to guard against future loss; it does not reflect a legal determination of the validity of an insured's claim against the company. As another court has explained, "[a] reserve essentially reflects an assessment of the value of a claim taking into consideration the likelihood of an adverse judgment and . . . such estimates of potential liability do not normally entail an evaluation of coverage based upon a thorough factual and legal consideration[.]" *Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.*, 117 F.R.D. 283, 288 (D.D.C. 1986). Thus, neither the existence nor amount of a reserve fund has any bearing on the legal question of coverage, which is determined by the language of the insurance contract. For this reason, the courts routinely find such information not discoverable under Rule 26 because it is neither relevant nor calculated to lead to the discovery of admissible evidence. *See Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996); *Leski, Inc. v. Federal Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989); *Independent Petrochem.*, 117 F.R.D. at 288; *Union Carbide Corp. v. Travelers Indemnity Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973).[5] Further, in Michigan, as in other states, reserves are both required and regulated by state law. *See* MICH. COMP. LAWS §§ 500.810, .814a; MICH. ADMIN. CODE R 500.1231. In other words, state law "establish[es] reserve policy. For this reason alone, a reserved cannot accurately or fairly be equated with an admission of liability or the value of any particular claim." *In re Couch*, 80 B.R. 512, 517 (S.D. Cal. 1987). Accordingly, the City is not entitled to discovery of reserve information.

---

[5]The courts are split as to whether reserve information is relevant in a suit alleging a bad faith failure to settle or other type of bad faith. *See Imperial Textiles Supplies, Inc. v. Hartford Fire Ins. Co.*, No. 6:09-cv-03103, at *3 (D.S.C. May 5, 2011) ("While most courts agree that reserve information is irrelevant in the context of a coverage dispute, the courts are split regarding whether reserve information is relevant in an action alleging bad faith."). As discussed previously, this action involves a coverage dispute governed by the language of the insurance contracts, in which the good or bad faith of the companies is irrelevant. Thus the cases recognizing the discoverability of reserved information in a case alleging bad faith are inapposite.

The same holds true with respect to the documents, sought by the City, reflecting communications between the companies and any reinsurers. Similar to reserves, reinsurance involves a business decision, not a legal determination regarding policy interpretation or coverage. "Reinsurance involves an insurance company's effort to spread the burden of indemnification. It is a decision based on business decisions and not questions of policy interpretation." *Heights at Issaquah Ridge Owners Ass'n. v. Steadfast Ins. Co.*, No. C07-1045RSM, 2007 WL 4410260, at *4 (W.D. Wash. Dec. 13, 2007) (citing *Leski*, 129 F.R.D. at 106); *see also*, *Great Lakes Dredge & Dock Company v. Commercial Union Assurance Co.*, 159 F.R.D. 502, 504 (N.D. Ill. 1995) ("Reinsurance agreements, which at best reflect an undisclosed unilateral intention, are irrelevant to determining the intent of the parties to the primary insurance contract. Thus, they would be non-discoverable, even were a finding of ambiguity made."). While reinsurance policies themselves are discoverable pursuant to FED. R. CIV. P. 26(a)(1)(A)(iv), all other documents relating to reinsurance are irrelevant and not discoverable. *See Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, 268 F.R.D. 692, 695 (S.D. Fla. 2010); *Heights at Issaquah Ridge*, 2007 WL 4410260, at *5; *Great Lakes Dredge & Dock*, 159 F.R.D. at 504; *Potomac Electric Power Co. v. California Union Ins. Co.*, 136 F.R.D. 1, 2-3 (D.D.C. 1990); *Leski*, 129 F.R.D. at 106. Accordingly, the City's motions to compel will be denied with respect to both the reserve and reinsurance information sought by the City.

II.   ORDER

In view of the foregoing, it is ORDERED that the City's four motions to compel (docket #56-59) are hereby GRANTED IN PART and DENIED IN PART. Specifically, the motions are GRANTED to the extent they seek to compel production of: (1) claims manuals and related documents; and (2) underwriting manuals and related documents. The motions are DENIED in all other respects. It is further ORDERED that the companies provide the information required by this

Order within 21 days of the date hereof.

The attention of the parties is drawn to FED. R. CIV. P. 72(a), which provides a period of fourteen days from the date of this Order within which to file any objections for consideration by the District Judge as may be permissible under 28 U.S.C. § 636(b)(1). The parties are advised that, absent further Order from the Court, the filing of an appeal to the District Judge does not stay the obligations of the parties as set forth in this Order. *See* E.D. MICH. LR 72.2.

IT IS SO ORDERED.


Dated: April 26, 2012          s/Paul J. Komives
                               PAUL J. KOMIVES
                               UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing was sent to parties of record on April 26, 2012 electronically and/or by U.S. mail.

                               s/Michael Williams
                               Relief Case Manager for the Honorable
                               Paul J. Komives