UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES FIRE INSURANCE
COMPANY, a Delaware corporation,

    Plaintiff/Counter-Defendant,

v.

THE CITY OF WARREN, a Michigan municipal
corporation,

    Defendant/Counter-Plaintiff.

CASE NO.  2:10-CV-13128
JUDGE STEPHEN J. MURPHY, III
MAGISTRATE JUDGE PAUL J. KOMIVES

THE CITY OF WARREN, a Michigan municipal
corporation,

    Third-Party Plaintiff,

v.

ROYAL INDEMNITY COMPANY, n/k/a Arrowood Indemnity Company, a Delaware corporation, ARROWOOD INDEMNITY COMPANY, f/k/a Royal Indemnity Company, a Delaware corporation, HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Connecticut corporation, GLEN FALLS INSURANCE COMPANY, a Delaware corporation, and CONTINENTAL INSURANCE COMPANY, as successor to Glen Falls Insurance Company, a Delaware corporation,

    Third-Party Defendants.

                                                                    /

OPINION AND ORDER DENYING U.S. FIRE'S MOTION TO COMPEL (docket #60)

I.    OPINION

A.    *Background*

    This is an insurance coverage dispute between the City of Warren ("the City") and several

insurance companies regarding the insurance companies' duties to defend and indemnify with respect to a state court class action suit against the City currently pending in the Macomb County Circuit Court. In the underlying state court action, *Hill v. City of Warren*, the plaintiff class alleges that their property was damaged by the growth of roots from trees planted by, or at the insistence of, the City, in the City owned right-of-way between the street and sidewalk in front of plaintiffs' homes. The *Hill* action was filed on May 2, 2000. Plaintiff/Counter-Defendant United States Fire Insurance Company ("U.S. Fire") alleges that it provided general liability coverage to the City through a series of annual insurance polices beginning in the mid-1970s through June 30, 1998. U.S. Fire alleges that it first received notice of the *Hill* litigation on October 9, 2003. After further proceedings in the state court action, including an appeal of the trial court's class-certification decision and attempts to mediate the state court action, U.S. Fire filed this action on August 6, 2010, seeking a declaratory judgment that it is not liable to defend or indemnify the City with respect to the *Hill* litigation. Specifically, U.S. Fire claims that it has no duty to defend or indemnify the City because: (1) the City knew of the ongoing losses and failed to disclose its knowledge at the time of each annual policy renewal; (2) the City breached the notice provisions of the policies; (3) the property damage alleged in the *Hill* litigation is not the result of an "occurrence" covered by the policies; (4) any "occurrence" which did occur did so outside of the period the City was covered by the U.S. Fire policies; (5) all or some of the damages are within the intended acts exclusion of the policies; (6) damages in the *Hill* litigation arising from the release of sewage into the homeowner's property is excluded by the pollution exclusion of the policies; (7) to the extent damage occurred to city owned property, the damages sought in the *Hill* litigation are excluded by the owned property exclusion of the policies; (8) the damages sought are excluded by the policies because the City's actions constituted a willful violation of a penal statute; and (9) the first $250,000.00 in damages with respect to each individual plaintiff

2

in the underlying class action are subject to the City's self-insured retention in the policies. The City counter-claimed, asserting claims of breach of contract, breach of the implied duty of good faith and fair dealing, and reformation. The City also filed third-party complaints against third-party defendants Royal Indemnity Company ("Royal"), Arrowood Indemnity Company ("Arrowood"), Hartford Accident and Indemnity Company ("Hartford"), Glens Falls Insurance Company ("Glens Falls"), and Continental Insurance Company ("Continental"). The third-party complaint alleges that these companies provided insurance coverage to the City at various points from the 1960s through 2001, and seeks a declaratory judgment that these companies have a duty to defend and indemnify with respect to the *Hill* litigation. The third-party complaint also alleges a breach of contract claim against Royal.

The matter is currently before the Court on U.S. Fire's motion to compel discovery from the City, which has been joined in by Hartford. U.S. Fire and Hartford seek production of documents relating to the *Hill* action which have been withheld by the City on the grounds of attorney-client privilege and attorney work product. As set forth in U.S. Fire's supplemental brief, U.S. Fire and Hartford seek the following documents:

- written communications to, from, or shared with the City's Third Party Administrator, Crawford & Company, relating to the class action, as sought in Document Request Nos. 12, 13, 15, and 16;

- written communications between the City and the attorneys, experts, or agents who were defending the City in the Class Action, as sought in Document Request Nos. 9-13;

- documents describing and/or summarizing the claims or damages asserted against the City in the class action, as sought in Document Request Nos. 1, 2, 7, 17, and 22; and
- documents describing the nature, amount, and expense of the work performed on behalf of the City in the class action, as sought in Document Request Nos. 15, 16, 18, and 19.

In its initial motion, U.S. Fire argues that these documents are not protected by the attorney client

privilege because: (1) the privilege does not protect any documents shared with the City's third party administrator; (2) the City waived the privilege with respect to the documents sought by placing the information contained in those documents in dispute in this action; and (3) the City waived the privilege by agreeing to provide the documents by virtue of the Transition Agreement which settled an earlier coverage dispute between U.S. Fire and the City.

On January 23, 2012, after the City filed its response to the motion and U.S. Fire and Hartford filed replies, U.S. Fire agreed to undertake the defense of the City in the class action and to pay all defense costs incurred by the City after June 11, 2011. In light of this new posture, the Court granted the parties' request for supplemental briefing. U.S. Fire and Hartford filed their supplemental briefs on April 11, 2012. U.S. Fire continues to press the arguments it made in its initial motion, and further argues that the City is obligated to produce all of the requested documents relating to the *Hill* litigation now that U.S. Fire is defending the City in that action. Hartford continues to press the arguments initially made by U.S. Fire, and further argues that if U.S. Fire is entitled to the documents by virtue of its defense of the City, production should also be made to Hartford because production only to U.S. Fire would make efficient litigation impossible. The City filed a supplemental response on April 25, 2012. The City argues that: (1) it has not waived the privilege by disclosing documents to its agent, by placing any matter at issue, or by cooperating with U.S. Fire prior to the coverage dispute; (2) U.S. Fire and Hartford cannot show a substantial need for the documents sought because the underlying factual information was provided to U.S. Fire and Hartford; and (3) although U.S. Fire is paying defense costs, it is not controlling the defense of the *Hill* action and has placed conditions on its defense of the action, and thus is not entitled to the documents based on its decision to cover the defense of the action. U.S. Fire and Hartford filed replies on April 30, 2012, and the Court heard argument on the matter on May 1, 2012, at which time the Court took the matter under advisement.

B.     *General Discovery Standards*

Rule 26 sets forth the scope of discovery in federal courts. Pursuant to the rule, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and the court may also "order discovery of any matter relevant to the subject matter involved in the action." FED. R. CIV. P. 26(b)(1). The rule further explains that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id*. Rule 26(b)(1) "encourage[s] the exchange of information through broad discovery." *In re England*, 375 F.3d 1169, 1177 (D.C. Cir. 2004); *see also*, *Oklahoma v. Tyson Foods, Inc.*, 262 F.R.D. 617, 627-28 (N.D. Okla. 2009) ("Rule 26(b)(1) defines a broad scope of discovery."); *Seales v. Macomb County*, 226 F.R.D. 572, 575 (E.D. Mich. 2005) (Whalen, M.J). The relevancy standard set forth in Rule 26(b)(1) "is commonly recognized as one that is necessarily broad in its scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Security Plans, Inc. v. CUNA Mutual Ins. Society*, 261 F.R.D. 4, 8 (W.D.N.Y. 2009) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also*, *Regency of Palm Beach, Inc. v. QBE Ins. Corp.*, 259 F.R.D. 645, 648-49 (S.D. Fla. 2009).

Claims of privilege in federal court are governed by Federal Rule of Evidence 501, which provides:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501. Because only state law claims are asserted by the parties, only Michigan privilege law is implicated. Under Michigan law, "[t]he scope of the [attorney-client] privilege is narrow: it attaches only to confidential communications by the client to its adviser that are made for the purpose of obtaining legal advice." *Fruehauf Trailer Corp. v. Hagelthorn*, 208 Mich. App. 447, 450, 528 N.W.2d 778, 780 (1995). However, "[t]he privilege does not . . . automatically shield documents given by a client to his counsel." *McCartney v. Attorney General*, 231 Mich. App. 722, 731, 587 N.W.2d 824, 828 (1998). Further, while communications are privileged, the underlying facts are not privileged. *See Wrench LLC v. Taco Bell Corp.*, 212 F.R.D. 514, 517 (W.D. Mich. 2002) (citing *Fruehauf Trailer*, 208 Mich. App. at 451-52, 528 N.W.2d at 781).

Attorney work product not subject to the attorney client privilege is also protected from disclosure by Rule 26, which in relevant part provides:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
> (I) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

FED. R. CIV. P. 26(b)(3)(A). The rule further provides that "[i]f the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FED. R. CIV. P. 26(b)(3)(B). This provision establishes two categories of work product: fact work product, which is discoverable upon a showing of substantial need and undue hardship, and opinion work product, which is virtually undiscoverable. *See Director, Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C. Cir. 1997); *Eagle Compressors, Inc. v. HEC Liquidating Corp.*, 206

F.R.D. 474, 478 (N.D. Ill. 2002).

With respect to both the attorney-client privilege and the work product doctrine, the party resisting discovery bears the burden of demonstrating the applicability of the privilege. *See Auto Owners Ins. Co. v. Total Tape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990); *In re Shopping Cart Antitrust Litig.*, 95 F.R.D. 299, 305-06 (S.D.N.Y. 1982). "A party asserting the attorney-client privilege has the burden of showing with competent evidence of record that it clearly applies. . . . Where a party fails to substantiate a claim of attorney-client privilege, the claim will be denied." *Meridian Mortgage Corp. v. Spivak*, No. 91-3932, 1992 WL 205640, at *3 (E.D. Pa. Aug. 14, 1992) (citing *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *Delco Wire & Cable, Inc. v. Weinberger*, 109 F.R.D. 680, 687-88 (E.D. Pa. 1986)).

C.  *Analysis*

At the outset, the Court does not address whether the City has properly invoked the attorney client privilege or work product doctrine with respect to any particular document. U.S. Fire's motion and Hartford's concurrence raise more generalized challenges to the assertion of privilege made by the City, such as that the privilege has been waived or the material is discoverable notwithstanding the work product doctrine. Thus, the question of whether a particular document is properly protected by the attorney-client privilege or work product doctrine is not considered here, and remains an open question. Second, unlike the work product doctrine, under which a party may still obtain protected material upon a showing of substantial need, the attorney-client privilege is absolute, and no showing of need, no matter how great, provides a basis for piercing the privilege. *See Siddall v. Allstate Ins. Co.*, 15 Fed. Appx. 522, 523 (9th Cir. 2001); *Barr Marine Prods. Co., Inc. v. Borg-Warner Corp.*, 84 F.R.D. 631, 633 (E.D. Pa. 1979). Thus, the two issues must be analyzed separately, although the waiver issues discussed in connection with the attorney-client privilege are equally applicable to the

work product issue.

    1.    *Attorney-Client Privilege*

Turning to the attorney-client privilege, U.S. Fire and Hartford contend that the privilege is inapplicable for several reasons. The Court rejects each of these arguments.

*a. Third Party Administrator Documents*

The companies contend that the City has waived the attorney-client privilege with respect to any documents or communications involving or shared with the City's third party administrator, Crawford & Company. The Court disagrees. It is well established that a communications to a party's attorney for the purpose of obtaining legal advice made by the party's agent does not waive the privilege, nor does a communication by a client to an agent of the attorney. *See Grubbs v. Kmart Corp.*, 161 Mich. App. 584, 589, 411 N.W.2d 477, 480 (1987). Because the City's third-party administrator served as the City's agent in administering the claims involved in the underlying litigation, communication involving the City, Crawford & Company, and the City's attorneys are privileged.

*b. Waiver by Placing Documents "At Issue"*

The companies next argue that the City has waived the privilege by placing the documents "at issue" in this case. The Court disagrees. Although it is true that a party may impliedly waive the privilege by placing the subject matter of a privileged communication at issue in the litigation, this waiver is construed narrowly. *See In re Lott*, 424 F.3d 446, 453 (6th Cir. 2005). An implied waiver occurs only where the party's "pleading places at issue the subject matter of a privileged communication in such a way that the party holding the privilege will be forced to draw upon the privileged material at trial in order to prevail." *Id.* As explained by Judge Murphy, the cases in this area

> stand for the principle that when a party asserts a defense of good faith or reasonableness, and affirmatively offers testimony that the party consulted with their attorney as factual support for the defense, and when counsel's advice in some way supports the defendant's good faith belief, the defendant has put his counsel's advice "at issue" and thereby waives the attorney client privilege on the narrow subject matter of those communications.

*Henry v. Quicken Loans, Inc.*, 263 F.R.D. 458, 469 (E.D. Mich. 2008) (Murphy, J.).

Here, the City simply contends that the incidents in the *Hill* litigation are covered by the companies' policies. Nothing in its answer or counterclaims puts the substance of any attorney-client communication at issue in the case. Nothing in the City's claims that the companies breached their contracts or acted in bad faith puts at issue the City's communications with its attorneys. Rather, the claims are to be resolved based on the facts of the underlying incidents and the language of the contract. The City's position does not "force[] [it] to draw upon the privileged material at trial in order to prevail," *Lott*, 424 F.3d at 453, and the City disavows any intention to rely upon privileged matters in making its case. Accordingly, the City has not placed at issue its attorney-client communications so as to waive the privilege.

### c. Waiver by Transition Agreement

The companies next argue that the City has waived the privilege by virtue of the Transition Agreement, which settled prior coverage litigation between the parties. That agreement requires the City to, *inter alia*, provide reports on all claims which may affect the policy; "respond to . . . questions about those claims, and . . . make the attorneys defending those claims available . . . for information about the claims;" and "cooperate with [the companies] and . . . assist in the investigation, settlement, or defense of the claim or 'suit.'" Under Michigan law, a waiver of the attorney-client privilege must be an intentional, voluntary act. *See Leibel v. General Motors Corp.*, 250 Mich. App. 229, 241, 646 N.W.2d 179, 186 (2002). Nothing in the Transition Agreement expressly waives the attorney-client

9

privilege. The Agreement merely requires the City to cooperate with the insurance companies. While the Illinois Supreme Court has held that such cooperation agreements waive the attorney-client privilege, *see Waste Mgmt., Inc. v. International Surplus Lines Ins. Co.*, 579 N.E.2d 322, 327 (Ill. 1991), that view "has been soundly rejected by courts across the country." *PETCO Animal Supply Stores, Inc. v. Insurance Co. of N. Am.*, No. 10-682, 2011 WL 2490298, at *21 n.12 (D. Minn. June 10, 2011) (citing cases); *see also*, *Pittston Co. v. Allianz Ins. Co.*, 143 F.R.D. 66, 72 (D.N.J. 1992). Thus, the general cooperation provisions of the Transition Agreement do not waive the attorney client privilege.

### d. U.S. Fire's Defense of the Hill Litigation

Finally, U.S. Fire argues that its agreement to defend the *Hill* litigation operates to waive the attorney-client privilege with respect to that underlying litigation. Specifically, citing *Brogdon v. American Automobile Ins. Co.*, 290 Mich. 130, 287 N.W. 406 (1939), U.S. Fire argues that "[t]he City is now obligated to turn over *all* documents relating to defense of the class action." U.S. Fire's Supp. Br., at 6. *Brogdon* does not address the attorney-client privilege issue, however, holding only that an insured has a duty to cooperate with the insurer. U.S. Fire has cited no cases holding that an insurer's decision to tender a defense waives the insured's attorney-client privilege with respect to matters occurring prior to the tendering of the defense. Under the "common interest doctrine," "communications between an insured and its attorney connected with the defense of an underlying litigation are normally not privileged vis-a-vis the insured's carrier in a subsequent action." *Independent Petrochem. Corp. v. Aetna Casualty & Surety Co.*, 654 F. Supp. 2d 1334, 1365 (D.D.C. 1986). However because this doctrine is based on the alliance of interests between an insured and its insurer, and because such an alliance of interests does not exist where coverage is disputed, this doctrine is not applicable, and this insured-attorney communications remain privileged with respect

10

to the insurer, where as here there remains a dispute as to coverage. *See Fugro-McClelland Marine Geosciences, Inc. v. Steadfast Ins. Co.*, No. H-07-1731, 2008 WL 5273304, at *3 (S.D. Tex. Dec. 19, 2008); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408, 418 (D. Del. 1992); *Rockwell International Corp. v. Superior Ct.*, 32 Cal. Rptr. 2d 153, 158 (1994); *Metropolitan Life Ins. Co. v. Aetna Casualty & Surety Co.*, 730 A.2d 52, 61-62 (Conn. 1999); *In re Environmental Ins. Declaratory Judgment Actions*, 612 A.2d 1338, 1343 (N.J. Super. Ct. App. Div. 1992).[1]  Further, even if U.S. Fire's tendering of a defense resulted in the attorney-client privilege being inapplicable going forward, it would not defeat the privilege that had already attached to communications made before it tendered a defense of the underlying litigation. *See Bovis Lend Lease, LMB, Inc. v. Seasons Contracting Corp.*, No. 00 Civ. 9212, 2002 WL 31729693, at *15 (S.D.N.Y. Dec. 5, 2002).  Finally, U.S. Fire's argument that it will suffer "undue prejudice" is irrelevant to the extent any of the information sought is protected by the attorney-client privilege.  As noted above, a showing of need, no matter how great, cannot defeat the privilege.  Thus, any documents that are protected by the attorney-client privilege are not discoverable.

    2.    *Work Product Doctrine*

To the extent any documents sought by the companies do not contain privileged communications and are being withheld solely on the basis that they constitute attorney work product, the Court concludes that such documents are discoverable as to fact work product, but not as to opinion work product.

---

[1] Although there is no Michigan case law directly on point, the Michigan courts have held that no attorney-client relationship exists between an insurer and counsel retained by the insurer to defend the underlying litigation against the insured. In such a situation, the attorney's obligations are solely to the insured. *See Koster v. June's Trucking, Inc.*, 244 Mich. App. 162, 166-67, 625 N.W.2d 82, 84 (2000) (holding that insurer could not, under common interest privilege, assert attorney-client privilege with respect to communications between the insured and counsel in the underlying litigation).

Under Rule 26(b)(3), a party may generally obtain discovery of "fact" work product upon a showing of both a "substantial need" for the information and an inability to obtain the information from another source without "undue hardship," but generally may not obtain discovery of "opinion" work product. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).[2] This test generally requires a balancing of the relative importance of the information to the party's case against the party's ability to obtain the information by other means. *See Stampley v. State Farm Fire & Casualty Co.*, 23 Fed. Appx. 467, 471 (6th Cir. 2001). However, "as a general rule, inconvenience and expense do not constitute undue hardship." *Id.*; *see also*, *Colonial Gas Co. v. Aetna Casualty & Surety Co.*, 139 F.R.D. 269, 275 (D. Mass. 1991).

Here, U.S. Fire and Hartford have failed to make a showing of substantial need and undue burden. The City asserts, without contradiction, that it has provided to the companies all of the underlying factual information relating to the *Hill* litigation. What the companies primarily seek are the compilations of that underlying data by the City's attorney in the *Hill* case. There is no reason, beyond time and expense, why the companies cannot compile this data themselves, and as noted above inconvenience and expense are insufficient to show an undue burden. U.S. Fire's principal argument is that the work product doctrine is inapplicable because the documents were prepared in anticipation of litigation other than this suit. This argument is without merit. Although there is some split of authority, "the prevailing view is that documents prepared in anticipation of litigation are protected from disclosure even in subsequent actions." *Maine v. Norton*, F. Supp. 2d 63, 68 (D. Me. 2002); *see also*, *Lumber v. PPG Indus., Inc.*, 168 F.R.D. 641, 645 (D. Minn. 1996); *cf. Federal Trade*

---

[2]"Fact" work product consists of the information received by an attorney, while "opinion" work products consists of the mental impressions, judgments, conclusions, and legal analyses of the attorney. *See Reitz v. City of Mount Juliet*, 680 F. Supp. 2d 888, 892 (M.D. Tenn. 2010) (quoting *In re Columbia*, 293 F.3d at 294).

*Comm'n v. Grolier, Inc.*, 462 U.S. 19, 26-28 (1983). The Sixth Circuit adheres to this view. *See United States v. Leggett & Platt, Inc.*, 542 F.2d 655, 660 (6th Cir. 1976). Because the documents are protected by the work product doctrine, and because the companies have failed to show a substantial need for the documents and that they can not obtain the information from another source without an undue burden, the documents are not discoverable.

II.     ORDER

In view of the foregoing, it is ORDERED that U.S. Fire's motion to compel is hereby DENIED. The attention of the parties is drawn to FED. R. CIV. P. 72(a), which provides a period of fourteen days from the date of this Order within which to file any objections for consideration by the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

IT IS SO ORDERED.


                                                s/Paul J. Komives
                                                PAUL J. KOMIVES
                                                UNITED STATES MAGISTRATE JUDGE
Dated: 6/14/12

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on June 14, 2012.
>
>                                 s/Eddrey Butts
>                                 Case Manager